UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONALD WASHINGTON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 15-6615** |
| **FIELDWOOD ENERGY LLC** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court are Defendant Fieldwood Energy LLC's Second Motion for Summary Judgment or Alternatively for Reconsideration (Doc. 72) and Motion for Reconsideration (Doc. 73). For the following reasons, the Motion for Summary Judgment is DENIED, and the Motion for Reconsideration is GRANTED.

## BACKGROUND

Plaintiff Donald Washington alleges that he was injured when he slipped and fell while working aboard an oil and gas production platform located on the Outer Continental Shelf. Plaintiff was a cook employed by a third party,

1

Taylors International ("Taylors"), and assigned to the platform VR 272A. Plaintiff alleges that he was injured when he slipped and fell on unsecured stairs while carrying steaks. Plaintiff's Complaint alleged that Defendant Fieldwood Energy LLC ("Fieldwood") is liable to him under the Outer Continental Shelf Lands Act ("OCSLA") as the owner/operator of the platform, and Defendant Wood Group PSN, Inc. ("Wood Group") is vicariously liable to him for the negligence of its employee, Justin Roberts.

Defendant Fieldwood moved for summary judgment, arguing that Plaintiff was a borrowed employee of Fieldwood and thus his exclusive remedy was under the Longshore and Harbor Worker's Compensation Act ("LHWCA"). Defendant Wood Group also moved for summary judgment, arguing that its employee Justin Roberts was a borrowed employee of Fieldwood, and it therefore cannot be vicariously liable for his actions. In deciding these motions, the Court held that Justin Roberts was the borrowed employee of Fieldwood and therefore dismissed Plaintiff's claims against Wood Group. The Court, however, denied Fieldwood's Motion for Summary Judgment, holding that there were material issues of fact regarding Plaintiff's status as a borrowed employee of Fieldwood.

Fieldwood has now filed the two instant motions, which it has styled as a Second Motion for Summary Judgment or Alternatively Motion to Revise the Order and Reasons (Doc. 72) and a Motion to Revise Order and Reasons (Doc. 73). Despite what Fieldwood has titled these motions, each motion asks for reconsideration of this Court's prior Order and Reasons and will be treated as motions for reconsideration under Federal Rule of Civil Procedure 54(b). Fieldwood is not entitled to a second motion for summary judgment. Although

2

this Court continued the trial date after its ruling on Defendants' initial summary judgment motions, it did not reset a dispositive motion deadline. The dispositive motion filing deadline in this matter was June 13, 2017. Accordingly, Fieldwood's purported Second Motion for Summary Judgment, filed on August 29, 2017, was untimely. This Court will treat this motion as one for reconsideration.

## **LEGAL STANDARD**

A Motion for Reconsideration of an interlocutory order is governed by Federal Rule of Civil Procedure 54(b), which states that: "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'"[1] "'[T]he power to reconsider or modify interlocutory rulings is committed to the discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration' governing final orders."[2]

---

[1] Austin v. Kroger Texas, L.P., No. 16-10502, 2017 WL 1379453, at *9 (5th Cir. 2017) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990)).

[2] *Id.* (quoting Saint Annes Dev. Co. v. Trabich, 443 Fed. Appx. 829, 831–32 (4th Cir. 2011)).

## LAW AND ANALYSIS

Although presented in separate motions, Fieldwood challenges both of the Court's prior holdings regarding the borrowed employee status of Plaintiff and Justin Roberts. This Court will consider each of Fieldwood's arguments for reconsideration in turn.

### A. Plaintiff's Borrowed Employee Status

In its motion for reconsideration of this Court's holding that material issues of fact exist as to Plaintiff's status as a borrowed employee, Fieldwood asserts substantially the same arguments already addressed by this Court. It adds, however, a second declaration from Fieldwood employee, James Pena, and a new declaration from Taylors COO, Barry Johnson. Fieldwood does not present any reason why these declarations were not, or could not have been, included with its prior motion.[3] Even so, this additional evidence and argument does not persuade this Court to change its opinion.

Fieldwood's motion contests this Court's findings on three of the *Ruiz* factors regarding borrowed employee status. In *Ruiz v. Shell Oil Co.*, the Fifth Circuit delineated nine factors concerning whether an individual qualifies as a "borrowed employee." Fieldwood contests this Court's findings on the first three factors: (1) who has control over the employee and the work he is performing; (2) whose work is being performed; and (3) whether there was an

---

[3] "Courts evaluate motions to reconsider interlocutory orders under a 'less exacting' standard than Rule 59(e), but, nevertheless, look to similar considerations for guidance." Union Pac. R.R. Co. v. Taylor Truck Line, Inc., No. 15-0074, 2017 WL 2389411, at *1 (W.D. La. June 1, 2017). Rule 59(e) serves the narrow purpose of correcting "'manifest error[s] of law or fact or . . . presenting newly discovered evidence.'"[3] Advocare Int'l, LP v. Horizon Labs., Inc., 524 F.3d 679, 691 (5th Cir. 2008) (quoting Rosenzweig v. Azurix Corp., 332 F.3d 854, 863 (5th Cir. 2003)).

agreement, understanding, or meeting of the minds between the original and the borrowing employer.[4]

Regarding the second factor—whose work is being performed—this Court held that Plaintiff was performing the cooking and cleaning work of Taylors, not the oil and gas production work of Fieldwood, and therefore, that factor weighed in favor of a finding that Plaintiff was not a borrowed employee.

In its Motion for Reconsideration, Fieldwood complains about this Court's reliance on *Rollans v. Unocal Expl. Corp.*, which expressly held that a cook aboard a platform was performing the work of its actual employer who contracted with the platform operator to provide catering services.[5] Fieldwood argues that this Court should have instead followed the Fifth Circuit's holding in *Melancon v. Amoco Production Co.*, which held that a welder was doing the work of the platform operator, Amoco, because his "work assisted Amoco in the production of hydrocarbons by maintaining the production equipment and platforms in the Amoco field."[6] It went on to note that, "It is irrelevant that Melancon's primary job was welding, which was an essential, although only incidental, aspect of Amoco's business."[7] Fieldwood argues that Plaintiff's job of cooking and cleaning is likewise incidental to its oil production work.

Not only are the facts of *Melancon* easily distinguishable from those at issue here, its holding is not "in conflict" with *Rollans* as Fieldwood suggests. *Melancon* held that welding was an essential aspect of Amoco's business—oil production—and therefore Melancon was performing its work. Cooking and

---

[4] *See Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969).
[5] Rollans v. Unocal Expl. Corp., No. 93-431, 1993 WL 455731, at *2 (E.D. La. Nov. 4, 1993).
[6] Melancon v. Amoco Prod. Co., 834 F.2d 1238, 1245 (5th Cir. 1988).
[7] *Id.*

5

cleaning cannot be said to be an essential aspect of oil and gas production. In addition, the maintenance of production equipment is far less incidental to that production than cooking and cleaning for the crew. Accordingly, *Melancon* is in line with, and indeed supports, this Court's prior holding.

As to the third prong—considering the agreement between the employers—this Court's prior order held that the Master Service Agreement between Fieldwood and Taylors created material issues of fact regarding Plaintiff's borrowed employee status. The Agreement contains language stating that, "Contractor [Taylors] shall be, and perform at all times, as an independent contractor; and neither Contractor nor any member of Contractor Group shall be deemed to be subject to the control or direction of Company [Fieldwood] as to the details of the Work."[8] In addition, however, the Agreement also contains a provision requiring Taylors to endorse its insurance policies to include a borrowed servant endorsement. The Fifth Circuit has held that "a contract provision purporting to prohibit borrowed-employee status" creates an issue of fact as to the third factor, such that summary judgment would be appropriate only when "the remaining factors clearly point to borrowed-employee status."[9] As discussed above, at least the second factor points to a finding that Plaintiff is not a borrowed employee, and therefore, the Court found that this factor created a material issue of fact.

In seeking reconsideration, Plaintiff cites to the Fifth Circuit's opinion in *Alexander v. Chevron*, which distinguished similar language that did not expressly purport to prohibit a borrowing employer relationship.[10] Both the

---

[8] Doc. 52-2.
[9] Billizon v. Conoco, Inc., 993 F.2d 104, 106 (5th Cir. 1993).
[10] Alexander v. Chevron, U.S.A., 806 F.2d 526, 528 (5th Cir. 1986).

agreement in *Alexander* and the one at issue here contain language purporting to establish that the borrowed employee shall remain an independent contractor.[11] The court in *Alexander* distinguished this language from cases involving agreements that explicitly prohibited the employee from being considered a borrowed employee.[12] The agreement in *Alexander* is distinguishable from that at issue here, however, because the Agreement here contains a second sentence declaring that neither Taylors nor its employees "shall be deemed to be subject to the control or direction of Company [Fieldwood] as to the details of the Work." This additional sentence clearly purports to "prohibit borrowed-employee status" as it relates to the first *Ruiz* factor. Accordingly, this Court is unconvinced that it erred in its prior holding and maintains that the third *Ruiz* factor creates a material issue of fact.

In light of the material issues of fact present in the third factor and the second factor's clear counsel against a borrowed employee finding, this Court need not consider Fieldwood's arguments regarding the first factor of control. The Court declines to reverse its prior holding and maintains that a material issue of fact exists as to Plaintiff's borrowed employee status.

**B. Roberts's Borrowed Employee Status**

Next, Fieldwood argues that this Court erred in dismissing Plaintiff's claims against Wood Group after holding that its employee, Justin Roberts, was the borrowed employee of Fieldwood. Fieldwood does not contest Roberts's status, however, it argues that even if Roberts is its borrowed employee, Wood Group is not absolved of vicarious liability for his actions. This argument,

---

[11] *Id.*
[12] *Id.*

7

although mentioned by Fieldwood in its Reply to its Motion for Summary Judgment,[13] was not specifically addressed by this Court in its previous order. Finding that the argument has merit, the Court will do so now.

Fieldwood argues that Louisiana tort law applies to this issue through OCSLA and holds that that the lending employer is solidarily liable with the borrowing employer for the torts of the borrowed employee. Fieldwood cites to the Louisiana Supreme Court's decision in *Morgan v. ABC Manufacturer* for this dual employer doctrine argument.[14] Wood Group opposes this argument, asserting instead that the dual employer doctrine does not apply in cases involving LHWCA.

In *Morgan*, the Court held that both the lending and borrowing employers could be liable to an injured third party for the torts of the borrowed employee.[15] Wood Group cites to *Jones v. Compression Coat Corporation* and a string of other state appellate court cases for the proposition that *Morgan* does not apply to cases involving the LHWCA. Indeed, Jones stated that "because the instant case involves the LHWCA, *Morgan* is inapplicable."[16] However, *Jones* and all of the other cases cited by Wood Group concern a different issue than that present here.[17]

---

[13] Doc. 63.
[14] 710 So. 2d 1077, 1082 (La. 1998).
[15] *Id.*
[16] Jones v. Compression Coat Corp., 776 So. 2d 505, 510 (La. App. 3 Cir. 2000).
[17] Ortega v. Semco, L.L.C., 762 So. 2d 276, 278 (La. App. 5 Cir. 2000) (considering "whether the borrowing employer (Semco) is liable to the borrowed employee (Ortega), in tort, for injuries he sustained while at work at the temporary job site"); Foster v. Consol. Employment Sys., Inc., 726 So. 2d 494, 496 (La. App. 5 Cir. 1999) (considering co-employees); Dyer v. Serv. Marine Indus., Inc., 723 So. 2d 1135, 1138 (La. App. 1 Cir. 1998) (considering borrowed employee relationship); Foreman v. Danos & Curole Marine Contractors, Inc., 722 So. 2d 1, 8 (La. App. 1 Cir. 1998) (considering co-employees).

In *Jones*, the plaintiff was employed by a staffing company and was working for Compression Coat Corporation ("Compression") when he was injured. Plaintiff alleged that the negligence of Mark Hanks, who was employed by Paul Laine Company ("PLC") but working for Compression, caused his injury. The court held that both the plaintiff and Hanks were the borrowed employees of Compression. The court then considered whether the plaintiff could proceed in his claim against PLC. The court held that the rule of *Morgan* was inapplicable because the LHWCA applied to prevent suit between co-employees. It held that the LHWCA's prohibition against suits between co-employees extended to the solidary obligor of a co-employee, i.e. the employee's nominal employer. Therefore, the plaintiff could not succeed in its suit against PLC for Hank's negligence.

Here, this Court has not held that Plaintiff and Roberts are co-employees. Indeed, it has affirmed its prior holding that there are material issues of fact regarding whether Plaintiff is the borrowed employee of Fieldwood. Accordingly, the LHWCA's prohibition against suits between co-employees and their solidary obligors is inapplicable in this case. *Jones* and the other cases cited by Wood Group do not stand for the proposition that Wood Group cannot be held vicariously liable for the negligence of Roberts when he is the borrowed employee of another. In fact, *Jones* seems to suggest the opposite. *Jones* expressly states that a "vicariously liable nominal employer and its negligent nominal employee . . . are solidary obligors."[18] The only thing that prevents suit against the nominal employer in *Jones* is the co-employee

---

[18] *Jones*, 776 So. 2d at 509.

status between the negligent nominal employee and the injured party.[19] Such a relationship is not at issue here, and the Wood Group has not shown this Court how the analysis of *Jones* applies in this case.

Wood Group next argues that the reasoning of *Morgan* is no longer sound in light of the Louisiana legislature's amendment abolishing solidary liability between joint tortfeasors. Indeed, "[a]fter the 1996 tort revision legislation, [Civil Code article] 2324 provides that joint tortfeasors are liable only for the proportion of fault allocated to them by the trier of fact and are no longer in solido."[20] Employers and employees, however, have never been considered joint tortfeasors.[21] "A joint tortfeasor is one whose conduct (whether intentional or negligent) combines with the conduct of another so as to cause injury to a third party."[22] "In the context of vicarious liability, an employee and employer are not joint tortfeasors, since '[l]iability is imposed upon the employer without regard to his own negligence or fault; it is a consequence of the employment relationship.'"[23] Accordingly, the 1996 amendments had no effect on the relationship between employees and employers, and there is therefore no reason why such would invalidate the holding in *Morgan*.

Accordingly, Wood Group has failed to convince this Court that the rule of *Morgan* should not apply to this case through OCSLA. *Morgan* holds that a lending employer is still liable for to an injured third party for the torts of the borrowed employee. Accordingly, Wood Group may still be vicariously liable

---

[19] *Id.*
[20] WILLIAM CRAWFORD, 12 LA. CIV. L. TREATISE § 8:1 (2d ed.).
[21] *See* Sampay v. Morton Salt Co., 395 So. 2d 326, 328 (La. 1981).
[22] Milbert v. Answering Bureau, Inc., 120 So. 3d 678, 688 (La. 2013).
[23] Bienville Par. Police Jury v. U.S. Postal Serv., 8 F. Supp. 2d 563, 567 (W.D. La. 1998) (quoting *Sampay*, 395 So. 2d at 328 (La. 1981)).

for the negligence of it nominal employee, Roberts. This Court therefore reverses its dismissal of Wood Group from this matter and reinstates Plaintiff's claims against it.

## **CONCLUSION**

For the foregoing reasons, Defendant Fieldwood's Motion for Summary Judgment is DENIED, and Motion for Reconsideration is GRANTED. The Court REVERSES its ruling dismissing Wood Group in Record Document 68 and REINSTATES Plaintiff's claims against Wood Group for vicarious liability of Justin Roberts.

New Orleans, Louisiana this 2nd day of January, 2018.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**